**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

IN RE APPLICATION OF PT. BANK
WOORI SAUDARA INDONESIA 1906, TBK
FOR AN ORDER PURSUANT TO 28 U.S.C.
§ 1782 TO CONDUCT DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS

**25 Misc. 523 (JPC) (GS)**

**REPORT &**
**RECOMMENDATION**

-----------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Before the Court is an *ex parte* application by PT. Bank Woori Saudara

Indonesia 1906, Tbk ("Applicant" or "BWS") for judicial assistance pursuant to 28

U.S.C. § 1782, seeking authorization to serve document subpoenas on eighteen

financial institutions in the United States.  (Dkt. No. 1 ("Application" or "App.")).

For the reasons set forth below, the Court recommends that the Application be

**GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### A.    The Alleged Fraud Scheme

The following facts are taken from the Declarations of Mohammed Hadef

Jouan Rashed Al Dhaheri, a lawyer for BWS in the United Arab Emirates ("UAE")

(Dkt. No. 2 ("Al Dhaheri Decl.")), and Thomas Vandenabeele, BWS's U.S. counsel

(Dkt. No. 3 ("Vandenabeele Decl.")), submitted in support of the Application.

BWS is a bank in Indonesia.  (Al Dhaheri Decl. ¶ 5).  From approximately

2022 to May 2025, PT Bara Daya Energi ("BDE"), an Indonesian company and

customer of BWS, allegedly perpetrated a sophisticated fraud scheme involving

fabricated coal trading documentation and fictitious letters of credit.  (*Id.* ¶¶ 5-7, 9).

In the course of the scheme, BDE, together with its confederates, misappropriated tens of millions of U.S. dollars and caused BWS more than $74.6 million in damages.  (*Id.* ¶¶ 5-6).

The alleged scheme consisted of three components.  (*Id.* ¶ 9).  First, BDE submitted fictitious letters of credit from third-party banks, inducing BWS to pay funds to BDE that BWS has been unable to recover from the purported issuing banks.  (*Id.* ¶¶ 10-11).  Second, BDE impermissibly transferred letters of credit to a UAE company, Wonder Star Trading LLC ("Wonder Star"), causing BWS to make payments to Wonder Star's banks, which BWS likewise has been unable to recover. (*Id.* ¶¶ 12-19, 29).  Third, BDE and AL Global Energy LLC (UAE) ("Global Energy"), another UAE company, submitted fabricated coal trading documentation to Global Energy's banks, which forwarded the documents to BWS, causing BWS to give payment undertakings to Global Energy's banks.  (*Id.* ¶¶ 20-21).

BWS discovered the fraud in May 2025.  (*Id.* ¶ 5).  On November 3, 2025, BWS commenced civil proceedings in the Dubai Court of First Instance in the UAE (the "Dubai Court") against Wonder Star and its CEO and majority shareholder, Bilal Iqbal Merchant ("Merchant") (the "Ongoing UAE Proceedings").  (*Id.* ¶¶ 12, 25 & Ex. A).  BWS asserts tort claims sounding in fraud as well as claims for unjust enrichment and joint and several liability.  (*Id.* ¶¶ 30-36).  BWS also intends to commence similar civil proceedings before the same Dubai Court against (1) Global Energy and its sole shareholder and director, Nagoormeeran Mahatheer Mohammed ("Mahatheer"), and (2) Infinite Mining and Energy FZE ("Infinite

2

Mining"), a UAE company owned by Merchant which BWS claims received $5 million of the fraud proceeds, and its manager, Manesh Viswambharan ("Manesh") (the "Contemplated UAE Proceedings").  (*Id.* ¶¶ 22, 27, 50).[1]

## B.    The Instant Application

BWS commenced this proceeding on November 18, 2025, filing its *ex parte* application (Dkt. No. 1 ("Appl.")), the Al Dhaheri and Vandenabeele Declarations (Dkt. Nos. 2-3), and a supporting memorandum of law (Dkt. No. 4 ("App. Br.")).

Through its Application, BWS seeks to serve subpoenas for documents on sixteen banks (the "Respondent Banks"), The Clearing House Payments Company L.L.C. ("TCH"), and The Federal Reserve Bank of New York (the "New York Fed") (collectively, "Respondents").  (App. at 1).  The Respondent Banks are: (i) Citibank, N.A. ("Citibank"); (ii) The Bank of New York Mellon ("BNY Mellon"); (iii) JPMorgan Chase Bank, N.A. ("JPMorgan"); (iv) Habib American Bank ("Habib"); (v) Deutsche Bank Trust Co. Americas ("Deutsche Bank"); (vi) Société Générale, New York Branch ("SocGen"); (vii) HSBC Bank USA, N.A. ("HSBC"); (viii) BNP Paribas USA ("BNP Paribas"); (ix) Wells Fargo Bank, N.A. ("Wells Fargo"); (x) UBS AG ("UBS"); (xi) Bank of America, N.A. ("Bank of America"); (xii) Bank of China, New York Branch ("Bank of China"); (xiii) Standard Chartered Bank US ("SCB"); (xiv) Commerzbank AG, New York Branch ("Commerzbank"); (xv) Barclays Bank, PLC ("Barclays"); and (xvi) Mashreq Bank PSC, New York Branch ("Mashreq").  (*Id.*).

---

[1] BWS does not say if it has commenced, or intends to commence, any proceedings against BDE.

3

Attached to BWS's Application is a subpoena with sample document requests to be served on each of the Respondents.  (*Id.* Ex. A).  For each of the sixteen Respondent Banks, the sample subpoena seeks records relating to all wire transfers sent or received by eighteen different entities and individuals: BDE, Wonder Star, Infinite Mining, Global Energy, Merchant, Manesh, Mahatheer, and eleven other individuals associated with BDE and Wonder Star.  (*Id.* at 4-6; *see* Al Dhaheri Decl. ¶ 50).  For TCH and the New York Fed, BWS seeks records relating to wire transfers sent or received by the eighteen entities and individuals using TCH's payment systems and the New York Fed's funds transfer systems, respectively. (Appl. Ex. A at 3, 6-9).  All the proposed subpoenas to Respondents (the "Proposed Subpoenas") cover transactions during the period from April 1, 2019 through the present.  (*Id.* at 3).

In support of the Application, BWS states that numerous transfers involving the misappropriated funds were made in U.S. dollars.  (*See* Al Dhaheri Decl. ¶¶ 20-23).  Almost all global payments denominated in U.S. dollars pass through the CHIPS system operated by TCH or the Fedwire system operated by the New York Fed in New York City.  (Vandenabeele Decl. ¶ 27).  Further, according to BWS, such U.S. dollar-denominated wire transfers are "necessarily cleared through correspondent banking relationships maintained by the Respondents in New York." (Al Dhaheri Decl. ¶ 23).

BWS has identified some $52.8 million in improperly transferred funds, all in U.S. dollars, to bank accounts of Wonder Star held at Habib Bank AG Zurich,

Mashreqbank PSC, and MCB Bank in the UAE.  (*Id.* ¶ 19).  In addition, Global

Energy submitted coal trading documents to its banks, including Habib Bank AG

Zurich and Emirates NBD Bank.  (*Id.* ¶ 21).  BWS has identified that the following

five Respondents served as correspondent banks for Wonder Star's and Global

Energy's banks:  Respondents SCB and Habib (for Habib Bank AG Zurich),

Respondent Mashreq (for Mashreqbank PSC), Respondent JPMorgan (for MCB

Bank), and Respondent Citibank (for Emirates NBD Bank).  (*Id.* ¶ 23).

However, BWS does not link any of the eleven other Respondent Banks to

transactions involving the fraudulent scheme.  Instead, BWS provides information

indicating that these banks act as global correspondent banks for U.S.-dollar

denominated wire transfers through their offices in New York, and that some

(though not all) of the banks provide correspondent banking services for banks

located in the UAE.  (Vandenabeele Decl. ¶¶ 35, 37-39, 41-47).

BWS states that the requested bank records are relevant to the Ongoing UAE

Proceedings and the Contemplated UAE Proceedings (together, the "UAE

Proceedings") for three reasons.  First, the records will help BWS establish the

essential elements of its claims, including, *inter alia*, by revealing the exact path of

the fraud proceeds, which will show the defendants' receipt of such proceeds and

establish a causal link between the invalid documentation and BWS's losses.  (App.

Br. at 12-13; Al Dhaheri Decl. ¶¶ 38-40, 51).  Second, the records will assist BWS in

identifying recoverable assets and additional conspirators who may be joined as

defendants.  (App. Br. at 13; Al Dhaheri Decl. ¶ 51).  Third, the records will provide

transaction-level detail that may enable BWS to hold individual directors of the relevant corporate entities personally liable.  (App. Br. at 13; Al Dhaheri Decl. ¶ 52).

## LEGAL STANDARDS

Under 28 U.S.C. § 1782(a),

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

"A district court analyzes a § 1782 petition in two steps." *Banoka S.à.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 64 (2d Cir. 2025).  First, as a threshold matter, the court must determine whether Section 1782's three statutory requirements are satisfied: "that '(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign [or international] tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.'" *Id.* (quoting *Fed. Republic of Nigeria v. VR Advisory Servs.*, 27 F.4th 136, 148 (2d Cir. 2022)).

Second, if the requisite statutory requirements are met, the district court will then exercise its discretion to determine whether the sought-after discovery should be permitted.  *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) ("Once those statutory requirements are met, a district court may grant discovery under § 1782

in its discretion."); *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018) ("The permissive language of § 1782 vests district courts with discretion to grant, limit, or deny discovery.") (citation omitted).  The court's exercise of discretion under § 1782 "is guided by the statute's 'twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Banoka S.à.r.l.*, 148 F.4th at 64 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004)).

In *Intel*, the Supreme Court identified four factors for district courts to consider in conducting this analysis, "commonly referred to as the *Intel* factors." *Banoka S.à.r.l.*, 148 F.4th at 64.  Those factors are: "(1) whether 'the person from whom the discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264-65).  These factors are "'non-exclusive,'" and the Second Circuit has cautioned that they "'are not to be applied mechanically.'" *Banoka S.à.r.l.*, 148 F.4th at 65 (quoting *Kiobel*, 895 F.3d at 244-45).

Finally, "it is neither uncommon nor improper for district courts to grant applications made pursuant to §1782 *ex parte*." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); *see also In re Tethyan Copper Co. Pty Ltd.*, No. 21 Misc. 377 (AT), 2022 WL 1266314, at *1 (S.D.N.Y. Apr. 28, 2022) ("Courts routinely grant such petitions *ex parte*.") (citing *Gushlak*, 486 F. App'x at 217). This procedure does not violate the due process rights of the subpoenaed party because that party "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak*, 486 F. App'x at 217.

## DISCUSSION

### A.    The Statutory Requirements

#### 1.    Resides or Is Found Within the District

Section 1782's "'resides or is found' language extends its reach to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 534 (2d Cir. 2019). "The constitutional limits of personal jurisdiction allow for a showing of either general or specific jurisdiction over each respondent." *In re Steinmetz*, No. 20 Misc. 212 (AJN), 2022 WL 170851, at *3 (S.D.N.Y. Jan. 19, 2022). BWS contends that both general and specific jurisdiction exist over all eighteen Respondents. The Court considers each basis for jurisdiction in turn.

#### a.  General Jurisdiction

In the Section 1782 context as in other civil cases, a corporate entity is subject to general jurisdiction "'when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at

home in the forum State.'" *In re Steinmetz*, 2022 WL 170851, at *3 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). "As a general matter, this typically refers to 'the place of incorporation and principal place of business'—the 'paradigm bases for general jurisdiction.'" *Id.* (quoting *Daimler*, 571 U.S. at 137); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business[.]").

Under this test, certain of the Respondents are subject to the general jurisdiction of this Court. That is true of TCH and the New York Fed, both of which maintain their headquarters in Manhattan (Vandenabeele Decl. ¶¶ 25-26), and both of which have repeatedly been found to reside or be found in this District for Section 1782 purposes. *See, e.g.*, *In re Ibiuna Crédito Gestão de Recursos Ltda.*, No. 24 Misc. 13 (JGK) (RFT), 2024 WL 1077559, at *4 n.4 (S.D.N.Y. Feb. 14, 2024), *R&R adopted* 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024); *Ex parte Abdalla*, No. 20 Misc. 727 (PKC), 2021 WL 168469, at *3 (S.D.N.Y. Jan. 19, 2021).

A number of the Respondent Banks—specifically, Citibank, BNY Mellon, JPMorgan, Habib, Deutsche Bank, HSBC, BNP Paribas, and SCB—also maintain their headquarters in Manhattan (Vandenabeele Decl. ¶¶ 9, 10, 11, 12, 13, 15, 16, and 21) and are likewise subject to general jurisdiction here. *See, e.g.*, *In re Golden Meditech Holdings Ltd.*, No. 24 Misc. 24 (DEH), 2024 WL 1349135, at *2 (S.D.N.Y. Mar. 29, 2024) (Citibank, BNY Mellon, JPMorgan, Deutsche Bank, BNP Paribas);

*In re Golden Meditech Holdings Ltd.*, No. 24 Misc. 24 (DEH), 2024 WL 5247285, at *3 (S.D.N.Y. Dec. 30, 2024) (HSBC and SCB).

With respect to the eight other Respondent Banks—Soc Gen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, Barclays, and Mashreq— BWS does not allege that any of them are incorporated in New York or maintain their corporate headquarters in New York. Rather, BWS states only that they maintain an office, branch, or multiple branches in New York, which, in the case of certain banks incorporated outside of the United States, BWS describes as their "U.S. headquarters," "New York Headquarters Branch," or "New York head office." (Vandenabeele Decl. ¶¶ 14, 17, 18, 19, 20, 22, 23, 24). BWS further alleges that these banks "regularly transact[] business" in New York, including by providing correspondent banking and U.S. dollar clearing services through their offices in New York. (*Id.* ¶¶ 14, 17, 18, 20, 22, 23, 24, 38, 41, 42, 44, 45, 46, 47, 48).

Assuming the truth of these allegations, they still are insufficient to establish general jurisdiction. *See, e.g.*, *In re Litasco SA*, No. 23 Misc. 354 (AS), 2023 WL 8700957, at *1 (S.D.N.Y. Dec. 15, 2023) (finding no general jurisdiction over Wells Fargo or Barclays); *Golden Meditech*, 2024 WL 1349135, at *3 (finding no general jurisdiction over Wells Fargo, Bank of America, Bank of China, or Commerzbank); *Ex Parte Application of Zhanel Shayakhmetova for an Order Granting Leave to Obtain Discovery for Use in a Foreign Proceeding*, No. 25 Misc. 260 (AS), 25 Misc. 262 (AS), 2025 WL 3754568, at *2 (finding no general jurisdiction over Soc Gen or UBS); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014)

10

(finding no general jurisdiction over a nonparty bank that "has branch offices in the forum, but is incorporated and headquartered elsewhere").

BWS argues that general jurisdiction exists over these banks because they "maintain their *local* headquarters or head offices in New York City, which demonstrates that they are 'found' in this District." (App. Br. at 8 (emphasis added)). This argument is without merit. To say that a foreign or an out-of-state company's "local" headquarters—*i.e.*, its headquarters in New York—are located in New York is simply an empty tautology. What matters is where the headquarters of the global or national entity are located—not the headquarters of its local operations. And here the headquarters of the relevant entities are located outside New York. *See Shayakhmetova*, 2025 WL 3754568, at *2 (rejecting argument that UBS AG is subject to general jurisdiction in New York because the headquarters of its U.S. subsidiary are here, because "a U.S. headquarters isn't the same as a global headquarters"); *Golden Meditech*, 2024 WL 1349135, at *2 n.3 (similarly rejecting applicant's argument that certain banks maintain their "head office" or "US headquarters" in this District as "insufficient to establish that these entities' principal place of business is in the District").[2]

---

[2] In the *Shayakhmetova* case, Judge Subramanian noted that some courts in this District have held that UBS is subject to general jurisdiction here. However, he "respectfully disagree[d] with those decisions" because, although they correctly note that UBS's *U.S.* headquarters are in New York, they do not "consider its global operations." *Shayakhmetova*, 2025 WL 3754568, at *2 n.2. As Judge Subramanian noted, UBS AG—the same entity named as a Respondent here—is domiciled in, and has its headquarters in, Switzerland. *Id.* at *2; *see also In re Application of Marinakis*, No. 24 Misc. 485 (JGK) (HJR), 2025 WL 696769, at *3 (S.D.N.Y. Feb. 21, 2025) (noting that "New York is plainly not the principal place of business for certain foreign banks, such as UBS AG").

### b. Specific Jurisdiction

"For specific jurisdiction, 'there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *In re del Valle Ruiz*, 939 F.3d at 529 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (cleaned up)). Put differently, specific jurisdiction "permits adjudicatory authority only over issues that arise out of or relate to the entity's contacts with the forum." *Id.* (cleaned up). In the Section 1782 context, this means that specific jurisdiction exists "where the discovery material sought proximately resulted from the respondent's forum contacts"—in other words, the respondent's purposeful availment of the forum "must be the primary or proximate reason that the evidence sought is available at all." *Id.* at 530. However, "where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id.*

Courts considering similar Section 1782 applications—*i.e.*, where the applicant casts a wide net over numerous banks that clear U.S.-dollar denominated transactions through correspondent accounts in New York—have required *some* reason to believe that each bank effectuated a relevant wire transfer in this District. Absent such a showing, the requisite connection between the respondent's forum contacts and the existence of relevant discovery material, necessary to establish specific jurisdiction, is lacking. *See In re Litasco*, 2023 WL 8700957, at *1-2 (specific jurisdiction lacking where "there is no evidence that these respondents

12

are the correspondent banks for any banks at which the foreign defendants (or the transferees of their funds) had accounts"); *Golden Meditech*, 2024 WL 1349135, at *3 (where applicant "does not identify any particular transaction conducted or bank used by those entities," there is "no basis to conclude that any particular Respondent effectuated any relevant wire transfer in this District"); *In re W. Afr. Mineral Trading Ltd.*, No. 24 Misc. 114 (DEH), 2024 WL 3862293, at *3 (S.D.N.Y. Aug. 19, 2024) (same); *Golden Meditech*, 2024 WL 5247285, at *4 (no specific jurisdiction where "Applicant does not identify any transaction where either Wells Fargo or Bank [of] America's New York branches may have served as intermediaries"); *Shayakhmetova*, 2025 WL 3754568, at *2 (proximate or but-for causation not established where applicant "doesn't explain why these banks (as opposed to any other) would have processed the money").

BWS argues that the Respondent Banks "participate in the largest USD clearing systems in the world," "process USD payments through their offices in New York," include "the owners of CHIPS" and are among "the largest correspondent banks in the world," and "act as correspondent banks for USD payments for international banks, including banks in the UAE." (App. Br. at 9-10). Without a more specific showing that the particular bank in question processed transactions relevant to the dispute at hand, however, none of these general averments suffices to establish specific jurisdiction. *See In re Litasco*, 2023 WL 8700957, at *1 (noting that applicant "does not even have evidence that these records exist; it simply speculates that they do because the foreign defendants used African banks and the

13

respondents perform correspondent banking services for African banks or participate in fund transfer systems"); *Golden Meditech*, 2024 WL 5247285, at *4 ("[W]hile it is true that *some* banks in Hong Kong use New York branches of Wells Fargo and Bank of America as correspondents for U.S. dollar transfers, Applicant points to no specific alleged transactions where these banks' New York branches *may have* served as intermediaries." (emphasis in original)); *Shayakhmetova*, 2025 WL 3754568, at *2 (rejecting, as overly "speculative," applicant's argument that its foreign adversary likely used respondent banks to make U.S. dollar transfers because banks have "extensive interactions with payments and clearinghouse systems supervised by the New York Federal Reserve" and "facilitate 'transfers to and from other large financial institutions with a U.S. presence'").

BWS cites cases that have authorized Section 1782 subpoenas to banks, including some of the same banks who are Respondents here, seeking records of wire transfers they may have processed in New York as correspondent banks. (App. Br. at 10-11; *see also* Vandenabeele Decl. ¶¶ 51-67). Among other cases, BWS cites *In re Abraaj Inv. Mgmt. Ltd.*, No. 20 Civ. 229 (VSB), 2023 WL 2674752, at *5 (S.D.N.Y. Mar. 29, 2023), for the proposition that "potentially serving as intermediaries" for relevant wire transfers suffices to establish specific jurisdiction over correspondent banks. BWS also cites *In re Application of Mammoet Salvage, B.V.*, No. 23 Misc. 73 (LJL), 2025 WL 3009507, at *12 (S.D.N.Y. Oct. 28, 2025), for the proposition that a correspondent bank's "maintenance of a New York branch and their membership in CHIPS" is sufficient to establish specific jurisdiction.

14

But BWS misreads these cases. As Judge Subramanian explained in *Litasco*, the decision in *Abraaj Inv. Mgmt.* is distinguishable, because "[t]here, the applicant established that the banks were the correspondent banks for the particular banks at which the transferees had accounts." *In re Litasco*, 2023 WL 8700957, at *2. "By contrast," in *Litasco* there was "no evidence that these respondents are the correspondent banks for any banks at which the foreign defendants (or the transferees of their funds) had accounts," and hence specific jurisdiction was lacking. *Id.* The subsequent decision in *Mammoet Salvage* is distinguishable on the same ground. As the court noted, each of the seven bank respondents in that case served as correspondent banks for the foreign bank (TBI) that acted as the bank for the applicant's foreign adversary (BOC) in processing U.S. dollar transactions. *Mammoet Salvage*, 2025 WL 3009507, at *4-5 & n.3; *see also id.* at 11 n.6 (expressly distinguishing the decision in *Golden Meditech*, *supra*, 2024 WL 1349135, on the ground that "here, Respondents are correspondent banks with TBI, which conducts BOC's international transactions").[3]

Thus, the decisions in *Abraaj Inv. Mgmt.* and *Mammoet Salvage* do not contradict the principles laid down in cases such as *Litasco*, *Golden Meditech*, *W. Afr. Mineral Trading*, and *Shayakhmetova*, as described above.[4] Applying those

---

[3] BWS also cites *Marinakis*, 2025 WL 696769, at *4, and *In re Ex Parte Application of N.P.S.SF. Debt Co., S.à.r.l.*, Dkt. No. 7, No. 23 Misc. 217 (JPO) (S.D.N.Y. July 7, 2023). But *Marinakis* assumed that the respondent banks there had processed wire transfers in this District, and were therefore subject to specific personal jurisdiction; it did not analyze whether the applicant had made an adequate showing that the banks did so, nor did it discuss *Litasco*, *Golden Meditech*, or similar cases. *See Marinakis*, 2025 WL 696769, at *4. The one-page Order in *N.P.S.SF. Debt Co.* did not discuss any issues of personal jurisdiction.

[4] It is notable, and regrettable, that BWS's memorandum of law does not cite *Litasco*, *Golden Meditech*, or the other cases finding no personal jurisdiction on comparable facts. BWS's counsel

15

principles here yields the conclusion that, with one exception, BWS has failed to establish specific jurisdiction over the eight Respondent Banks who are not already subject to the Court's general jurisdiction. The one exception is Mashreq: BWS alleges that Mashreq Bank PLC was one of Wonder Star's banks and processed U.S. transfers for Wonder Bank through its New York branch. (App. Br. at 10; Al Dhaheri Decl. ¶¶ 19, 23). As for the seven other banks, BWS does not allege that they processed any relevant transfers connected to the alleged fraud or served as correspondent banks for any of Wonder Star's or Global Energy's banks in the UAE.[5] The fact that these Respondent Banks are large global correspondent banks,

---

cannot credibly claim they were unaware of those rulings: They were counsel of record for the applicant in *Golden Meditech*. An attorney has an ethical obligation to bring to the tribunal's attention "controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." N.Y.R.P.R. § 3.3(a)(2). "'In an *ex parte* proceeding, in which the adversary system lacks its usual safeguards, the duties on the moving party are correspondingly greater.'" *Great E. Shipping Co. v. Phoenix Shipping Corp.*, No. 07 Civ. 8373 (DLC), 2007 WL 4258238, at *2 (S.D.N.Y. Dec. 4, 2007) (quoting *Time Warner Ent't Co., L.P. v. Does Nos. 1-2,* 876 F. Supp. 407, 415 (E.D.N.Y. 1994)); *see also Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1402 n.13 (S.D.N.Y. 2022) ("Full disclosure of adverse authority is helpful to the court—particularly in cases, where, as here, a motion is unopposed. As the commentary to New York Rule of Professional Responsibility 3.3 states, '[a] tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it.'" (citing N.Y.R.P.R. 3.3 comment [4])). By citing rulings and orders they characterize as supporting their position that the Respondent Banks are subject to specific jurisdiction, while omitting authority directly adverse to that position, counsel's *ex parte* application provided a misleading presentation of the law in this District concerning specific jurisdiction over correspondent banks in Section 1782 petitions. The Court expects more of counsel who practice in the Southern District of New York. *See Great E. Shipping Co.*, 2007 WL 4258238, at *1-3 (chastising counsel for failing to cite adverse authority in *ex parte* application, while citing other cases supporting their position, and directing them to bring to the court's attention the split of authorities in this District in future *ex parte* applications).

[5] In a footnote to its U.S. counsel's declaration, BWS indicates that Bank of America currently serves as a correspondent bank for Emirates NBD Bank. (Vandenabeele Decl. ¶ 44 n.51 (citing Emirates NBD's website)). Elsewhere, however, in identifying correspondent banks for Emirates NBD Bank relevant to its claims, BWS mentions only Citibank and does not mention Bank of America. (Al Dhaheri Decl. ¶ 23; Pl. Br. at 10). The oblique reference in U.S. counsel's declaration is an insufficient basis for the Court to conclude that specific jurisdiction exists over Bank of America, especially in the absence of a specific argument by BWS that Bank of America served as a correspondent bank for Emirates NBD for the relevant transactions or during the relevant period.

16

or members of the CHIPS or Fedwire systems, or act as correspondent banks for other banks in the UAE, is not enough to establish specific jurisdiction.

Accordingly, the Court finds that BWS has not shown that seven of the Respondent Banks— Soc Gen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, and Barclays—are subject to either general jurisdiction or specific jurisdiction. Those banks neither "reside" in nor are "found" in this forum for purposes of the first prong of the Section 1782 statutory analysis.

### 2.    For Use in a Foreign Proceeding

The other two prongs of the statutory analysis do not merit as much discussion. Applicant has satisfied the second statutory requirement—that the discovery be "for use" in a proceeding before a foreign or international tribunal. BWS has already commenced a civil lawsuit in the Dubai Court against Wonder Star and Merchant, *i.e.*, the Ongoing UAE Proceeding. And BWS has adequately explained how wire transfer records it hopes to discover through this Application would be relevant in helping it prove its claims in that proceeding. (App. Br. at 12-13). That is enough to satisfy the "for use" prong.

In addition, BWS has adequately explained how the records will be of use for the Contemplated UAE Proceedings it intends to bring against Global Energy, Mahatheer, Infinite Mining, and Manesh. (*Id.*). To satisfy the "for use" requirement, a proceeding need not be pending before a foreign tribunal; it is sufficient if such a proceeding is "within reasonable contemplation." *Intel*, 542 U.S. at 259. The requirement is met where the applicant "present[s] to the district court

17

some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds, Accounts And/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015).

BWS has presented such a "concrete basis" here. It represents, among other things, that it "intends to commence the Contemplated UAE [] Proceedings," that it has "instructed [its] UAE counsel" to commence the Contemplated UAE Proceedings, and that counsel has taken steps to do so. (Al Dhaheri Decl. ¶¶ 27, 53; App. Br. at 13-14). It also specifies that the Contemplated UAE Proceedings "will be based on the same underlying wrongful scheme" as is alleged in the Ongoing UAE Proceedings and that it anticipates seeking to consolidate the two proceedings. (Al Dhaheri Decl. ¶ 27). Thus, these Proceedings are "within reasonable contemplation" for purposes of the for-use prong. *See In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (finding that proceeding was reasonably contemplated where applicant "stated its intent" to bring suit and "articulated a theory on which it intended to litigate").

The Court notes that the UAE Proceedings involve a total of only six current and prospective defendants (Wonder Star, Merchant, Global Energy, Mahatheer, Infinite Mining, and Manesh). The Proposed Subpoenas, however, seek wire transfer records relating to not only these six entities and individuals, but also twelve other entities and individuals. To the extent that BWS seeks these records in order to determine whether it has a basis for bringing claims against these

18

twelve other entities and individuals (*see* App. Br. at 13; Al Dhaheri Decl. ¶¶ 27, 52), it is doubtful that the Application satisfies the for-use prong.  *See In re Novalpina Cap. Partners I GP S.À.R.L.*, No. 23 Misc. 25 (PGG), 2025 WL 1160854, at *20 (S.D.N.Y. Apr. 21, 2025) ("[C]ourts in this Circuit reject Section 1782 petitions where a petitioner's application indicates that the discovery it seeks is necessary to determine whether a claim in a foreign proceeding may be brought in the first place."); *In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) ("Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it.").

However, given the close relationship between the twelve other entities and individuals and those whom BWS has already sued or intends to sue, evidence concerning their wire transfers could be relevant to BWS's claims against the six defendants it has identified.  For example, one of the twelve is BDE.  Plainly BDE's wire transfers could help BWS prove the overall fraudulent scheme, the disposition of the fraud proceeds, and the role played by Wonder Star, Merchant, Global Energy, Mahatheer, Infinite Mining, and Manesh.  The same is true, if not necessarily to the same degree, of the eleven individuals who are shareholders or directors of BDE and Wonder Star.  Accordingly, the Court finds, at least for purposes of this *ex parte* application, that the entire scope of the Proposed Subpoenas falls within the for-use prong.

### 3.   Interested Person

As for the third statutory requirement, BWS is undoubtedly an "interested person" for purposes of Section 1782 due to its status as the claimant in the Ongoing UAE Proceeding and the prospective claimant in the Contemplated UAE Proceedings.  *See Intel*, 542 U.S. at 256 (there is "[n]o doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782"); *In re Furstenberg Fin. SAS*, 785 F. App'x 882, 885 (2d Cir. 2019) (applicants who contemplated filing criminal complaint in foreign jurisdiction were "interested persons").  This statutory factor is therefore satisfied.

## B.   Discretionary Factors

### 1.  First *Intel* Factor

Under the first *Intel* factor, courts consider whether the target of an applicant's discovery request is a participant in the relevant foreign proceeding. "[W]hen the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.  Here, BWS seeks discovery from eighteen financial institutions, none of which are parties it has sued or intends to sue in the UAE Proceedings.  Nor is there any reason to believe that any of the Respondents would become participants in the UAE Proceedings.  (*See* Al Dhaheri Decl. ¶ 55).  Thus, the first *Intel* factor weighs in favor of granting the Application.

## 2. Second *Intel* Factor

The second *Intel* factor instructs district courts to consider "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "'Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance,'" and courts "should deny discovery on the basis of [a] lack of receptiveness only where it is provided with 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of [S]ection 1782.'" *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100-02 (2d Cir. 1995)).

In the context of this *ex parte* application, there is no indication that UAE courts would reject the requested evidence. To the contrary, BWS's UAE counsel states there is no indication that the Dubai Court, where the Ongoing UAE Proceedings are pending and where BWS intends to file the Contemplated UAE Proceedings, would not be receptive to the evidence sought by this Application. (Al Dhaheri Decl. ¶ 56). *See In re Investbank PSC*, No. 20 Misc. 260 (AT), 2020 WL 8512850, at *2 (S.D.N.Y. Dec. 30, 2020) ("[I]t appears that the Civil Court of the Emirate of Dubai would likely be receptive to the discovery requests and that the evidence sought would presumably be admissible."). Thus, the second *Intel* factor also weighs towards granting this Application.

21

### 3. Third *Intel* Factor

The third *Intel* factor seeks to flush out "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. This does not require the applicant to have first sought the requested discovery in the foreign tribunal; "'[c]ourts may grant [Section] 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding.'" *In re Batbold*, No. 21 Misc. 218 (RA) (OTW), 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021) (quoting *In re BNP Paribas Jersey Tr. Corp.*, No. 18 Misc. 47 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018)); *see also Azima v. Handjani*, No. 21 Misc. 501 (PGG), 2022 WL 2788400, at *7 (S.D.N.Y. July 15, 2022) (third *Intel* factor favored granting application where no showing that evidence sought "is within the jurisdictional reach of the [foreign] court, or that [applicant] seeks discovery here in bad faith").

On this *ex parte* application, there is no indication BWS is attempting to circumvent prohibitions on discovery in the UAE or is proceeding in bad faith. Further, BWS's UAE counsel represents that the Application "does not circumvent any proof-gathering restrictions under UAE law that I am aware of." (Al Dhaheri Decl. ¶ 56). Without any evidence suggesting BWS is acting in bad faith or circumventing UAE proof gathering restrictions, the Court finds the third *Intel* factor also favors granting the Application.

22

### 4. Fourth *Intel* Factor

The fourth *Intel* factor considers whether discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "'Under Rule 45 of the Federal Rules of Civil Procedure, whether a subpoena imposes an 'undue burden' depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re Batbold*, 2021 WL 4596536, at *4 (quoting *Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) (cleaned up)); *see also Mees*, 793 F.3d at 302 ("[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."). Under the fourth factor, a district court may "limit the scope" of the requested discovery. *In re Tel. Media Grp. Ltd.*, No. 23 Misc. 215 (JGLC), 2023 WL 5770115, at *11 (S.D.N.Y. Sep. 6, 2023).

Here, the Court has concerns under the fourth *Intel* factor to the extent that BWS's Proposed Subpoenas are addressed to Respondent Banks that have no demonstrable connection to the alleged fraud, the participants in the alleged fraud, or transactions relating to the alleged fraud. A basic requirement of Rule 45 is that the nonparty witness have relevant documents in its possession. *See, e.g.*, *Delgado v. Donald J. Trump for President, Inc.*, No. 19 Civ. 11764 (AT) (KHP), 2024 WL 3730499, at *3 (S.D.N.Y. May 13, 2024) (quashing nonparty subpoena where "it is

23

entirely speculative whether [the nonparty witness] has any information at all relevant to this case"); *Ferrari v. Leib*, Civil Action No. 24-7753 (ES) (MAH), 2024 WL 4432747, at *4 (D.N.J. Oct. 7, 2024) (denying motion to compel compliance with nonparty subpoena where "there is no showing that [nonparty] has any documents related to [defendant's] alleged defamation of [plaintiff], i.e., the underlying claims" in the lawsuit).

As described above in the discussion about specific jurisdiction (*see* Section A.1.b, *supra*), as to a number of the Respondent Banks, BWS does not allege that they processed any relevant wire transfers or even that they served as correspondent banks for any of the relevant UAE banks.  Rather, BWS seeks evidence from these banks based on speculation that, because they are large correspondent banks, including (in some instances) for banks in the UAE, they *may* have processed relevant wire transfers.  Not only is that not enough to establish specific jurisdiction for purposes of the first Section 1782 statutory factor; it also does not comport with general nonparty discovery principles that animate the analysis under the fourth *Intel* factor.

The decision in *In re Saul Klein*, No. 23 Misc. 211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023), *aff'd sub. nom. Klein v. Altara RK Inv. Ltd.*, No. 24-228-cv, 2025 WL 560105 (2d Cir. Feb. 20, 2025), illustrates the point.  In *Klein*, a party to contested probate proceedings in Brazil sought discovery under Section 1782 from twelve U.S. financial institutions for records concerning some twenty-six entities. *Id.* at *13.  When asked for the applicant's basis for pursuing subpoenas against the

24

twelve financial institutions, the applicant's counsel "was unable to identify a factual basis for seeking records from *any* of these entities." *Id.* (emphasis in original). Describing the application as "'an archetypal fishing expedition,'" Judge Engelmayer quashed the subpoenas under the fourth *Intel* factor because of their "wholly conjectural" basis. *Id.* at *13-14 (citation omitted). Simply put, the applicant had failed to "come forward with a concrete basis for the assumption that these 12 banks held pertinent transaction records" relating to the dispute, "as opposed to guessing that these 12 might." *Id.* at *14. The Second Circuit, by summary order, affirmed Judge Engelmayer's result and reasoning. 2025 WL 560105, at *3.

So too here, BWS has not identified a concrete factual basis for seeking records from many of the Respondent Banks. Significantly, that is true with respect to not only Respondent Banks that are not subject to the Court's general jurisdiction, but also to certain Respondent Banks that *are* subject to the Court's general jurisdiction. As to several of those Respondent Banks, BWS has not shown that they have any connection to the events underlying BWS's pending and contemplated lawsuits, and hence has not adduced any non-speculative reason to believe that these banks are in possession of relevant information for purposes of the fourth *Intel* factor. Those include the following four banks: BNY Mellon, Deutsche Bank, HSBC, and BNP Paribas. By contrast, BWS has alleged that Citibank, JPMorgan, Habib, and SCB—the other Respondent Banks subject to

25

general jurisdiction—served as correspondent banks for Wonder Star or Global Energy banks in the UAE.  (App. Br. at 10; Al Dhaheri Decl. ¶ 23).[6]

It may be true, as BWS emphasizes, that the burden on any particular Respondent in complying with the Proposed Subpoena is relatively modest.  (*See* App. Br. at 16).  The information sought is limited to records relating to wire transfers, which should not require a labor-intensive document collection search as would be the case if, for example, e-mail communications were requested.  BWS's counsel represents that Respondents keep electronic records of such transfers and are able to easily search and produce them.  (Vandenabeele Decl. ¶ 50).  Nonetheless, to unlock the doors of nonparty discovery under Rule 45, a party must have *some* concrete reason to believe the nonparty has responsive documents in its possession.  Fishing expeditions are not permitted even if the burden on the nonparty is not especially onerous.  In *Klein*, for example, the court took it as a given that the records sought from the financial institutions "are likely not onerous to unearth[,] given the nature of such electronically stored materials"; yet it quashed the subpoenas all the same, due to the applicant's inability "to articulate a

---

[6] The Court recognizes that cases such as *Litasco* and *Golden Meditech*, while relying on the absence of any connection between the underlying events and certain correspondent banks sufficient to support specific jurisdiction, do not address this circumstance in analyzing the fourth *Intel* factor as applied to banks as to which general jurisdiction existed.  *See, e.g.*, *In re Litasco*, 2023 WL 8700957, at *2; *Golden Meditech*, 2024 WL 1349135, at *5.  The Court does not know if that is because the correspondent banks subject to general jurisdiction in those cases also had a sufficient connection to the underlying facts or not.  Regardless, the reasoning underlying those cases' specific jurisdiction holdings—*i.e.*, that in the absence of a showing that the correspondent banks conducted any relevant transaction or acted as correspondent for any relevant foreign bank, the applicant "does not even have evidence that these [wire transfer] records exist," *In re Litasco*, 2023 WL 8700957, at *1—also informs the analysis under the fourth *Intel* factor.

non-speculative basis to believe that an entity relevant to the litigation had done business with the bank[.]" *In re Saul Klein*, 2023 WL 8827847, at *14.

The Court thus finds that the discretionary factors do not support issuance of the Proposed Subpoenas to the following eleven Respondent Banks: BNY Mellon, Deutsche Bank, HSBC, BNP Paribas, Soc Gen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, and Barclays. This does not mean that BWS is precluded from ever seeking Section 1782 discovery from these Respondent Banks in this matter. If, as a result of information produced by TCH, the New York Fed, or other Respondent Banks, or information produced during the course of the UAE Proceedings, BWS develops a non-speculative factual basis for believing that other Respondent Banks processed relevant transactions, it may renew its Section 1782 application as to those banks at that time. But BWS has not presented a sufficient basis on this Application to subpoena these eleven Respondents.[7]

The Court further finds that the discretionary factors do support issuance of the Proposed Subpoenas to the following seven Respondents: Citibank, JPMorgan, Habib, SCB, Mashreq, TCH, and the New York Fed. However, even as to those Respondents, the Court has concerns with the breadth of the Proposed Subpoenas.

---

[7] It could be argued that the Proposed Subpoenas should be issued *ex parte* even to those Respondent Banks with no connection to the alleged fraud, with those banks retaining the right to object if they believe the Subpoena is unduly burdensome or seeks information not in the bank's possession. The problem with this approach is that it costs money for a bank to hire counsel and file a motion to quash. Precisely because the costs of compliance may not be large, it may be cheaper for any individual bank to comply with the Subpoena (whether it has responsive documents or not) than to fight it. The effect would be to allow Section 1782 applicants to circumvent the restraints on fishing expeditions otherwise imposed by Section 1782 and Rule 45. The Court does not view this as an appropriate use of Section 1782. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017) (noting that because the availability of Section 1782 discovery is quite broad, "the role of the district courts as gatekeepers is paramount").

27

The document requests go back to April 2019, which is when BDE first became a customer of BWS. (Al Dhaheri Decl. ¶ 8). But BWS does not allege the fraud began until 2022, nearly three years later. (*Id.* ¶ 9). It provides no explanation as to why wire transfer records prior to 2022 for the eighteen different entities and individuals as to whom such records are sought would be relevant (or proportionate) to the claims it has asserted and seeks to assert. Accordingly, the Court would limit the time period covered by the Subpoenas to between October 1, 2021 (three months prior to the commencement of the alleged fraud) and the present. *See In re Litasco*, 2023 WL 8700957, at *2 (limiting timeframe of proposed subpoena where "there is no demonstrated need for discovery prior to the date of the contract at issue").

## C.    Notice

Finally, BWS requests that it be relieved from the obligation of giving notice of the Proposed Subpoenas to their adversaries in the UAE Proceedings. This request should be denied.

"[U]nless the district court's authorizing order provides otherwise, a party engaged in foreign litigation who serves a § 1782 subpoena *duces tecum* to obtain documents for use in the foreign litigation must first serve notice on all parties to the foreign proceedings." *In re Hornbeam Corp.*, No. 14 Misc. 424, 2015 WL 13647606, at *5 (S.D.N.Y. Sept. 17, 2015). Because Section 1782 provides that discovery must be taken in accordance with the Federal Rules of Civil Procedure, *see* 28 U.S.C. § 1782(a), the "default rule" in Section 1782 proceedings is that notice to the applicant's adversaries must be provided as required by Rule 45(a)(4). *In re*

28

*Republic of Türkiye*, No. 24 Misc. 557 (JPC), 2025 WL 2200159, at \*8 (S.D.N.Y. Aug. 1, 2025); *see* Fed. R. Civ. P. 45(a)(4) (providing that "before [a subpoena *duces tecum*] is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party"). "In the context of *ex parte* discovery applications under Section 1782, Rule 45(a)(4)'s notice requirement functions as a critical procedural safeguard meant to facilitate the right of adverse parties in the underlying foreign proceeding to challenge the discovery request, thereby ensuring that '[t]hese one-sided proceedings do not offend due process.'" *In re Republic of Türkiye*, 2025 WL 2200159, at \*7 (quoting *In re Application of Salem*, No. 24 Misc. 5 (JPC), 2024 WL 3026670, at \*9 (S.D.N.Y. June 17, 2024)).

Although case law permits exceptions to this default rule "where countervailing interests support a party's need to take discovery in secret," *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 442 (S.D.N.Y. 2024) (citation omitted), BWS has not adequately shown why an exception should be made here. BWS argues that it "has compelling evidence" that the targets of the proposed discovery have demonstrated "a willingness to destroy evidence[.]" (Al Dhaheri Decl. ¶ 59; *see* App. Br. at 18). But BWS points to no evidence, let alone compelling evidence, that any of the discovery targets have attempted to destroy any evidence.

BWS also argues that the "nature of the fraud scheme" demonstrates "a clear pattern of deliberate concealment and asset dispersal," including the presentation of "false information" and "fabricated documents" and dissipation of the fraud proceeds. (App. Br. at 18; *see* Al Dhaheri Decl. ¶¶ 59-60). But fraud schemes

29

invariably involve acts of concealment, falsification, and dissipation. That is not sufficient justification for dispensing with the "critical procedural safeguard" that notice provides. *In re Republic of Türkiye*, 2025 WL 2200159, at *7; *see also Golden Meditech*, 2024 WL 1349135, at *5 (rejecting similar request by applicant to be excused from notice requirement despite applicant's claims that foreign defendants had "secretly transferred funds" owed to applicant and "falsified bank records to hide the transfers").

Moreover, BWS's pursuit of legal remedies against the alleged perpetrators of the fraud is hardly a secret. As noted, BWS has filed a lawsuit in the UAE, *i.e.*, the Ongoing UAE Proceeding, laying out the fraud scheme in some detail. (Al Dhaheri Decl. Ex. A). Even before that, BWS's parent bank posted an announcement on its website about the fraud and BWS issued a press release stating that it is "conducting a thorough examination of the incident." *See* Yoon Young-sil, "Fraud Scandal Hits Bank Woori Saudara in Indonesia," *BusinessKorea*, June 3, 2025, https://www.businesskorea.co.kr/news/articleView.html?idxno=243771; Press Release, Bank Woori Saudara, "Bank Woori Saudara's Explanation on Financial Incident," June 5, 2025, https://www.idx.co.id/StaticData/NewsAndAnnouncement/ ANNOUNCEMENTSTOCK/From_EREP/202506/7f8381a763_96bf3322cd.pdf. It therefore seems unlikely that providing notice to the current and prospective defendants in the UAE Proceedings will alert them to material new information.

BWS also argues that "there would be no prejudice" from a lack of notice, because its litigation adversaries will be able to object to the submission of any

evidence collected in the UAE Proceedings. (App. Br. at 18-19; Al Dhaheri Decl. ¶ 62). But as Judge Ho explained in *Golden Meditech*, this argument "misses the point," as "'the basic purpose of the Federal Rules of Civil Procedure . . . is to eliminate trial by ambush and encourage full disclosure of relevant information among the parties.'" *Golden Meditech*, 2024 WL 1349135, at *5 (quoting *Hornbeam*, 2015 WL 13647606, at *5).

Accordingly, the Court recommends that Applicant be required to serve its application materials, this report and recommendation, and the order to be issued by Judge Cronan on those entities and individuals named or to be named as defendants in the Ongoing UAE Proceedings or the Contemplated UAE Proceedings, namely, Wonder Star, Merchant, Global Energy, Mahatheer, Infinite Mining, and Manesh.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the Application be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends that the Application be granted with respect to Respondents Citibank, JPMorgan, Habib, SCB, Mashreq, TCH, and the New York Fed; that the time period in the Proposed Subpoenas to be served on those Respondents be limited to October 1, 2021 through the present; and that the Application be denied with respect to Respondents BNY Mellon, Deutsche Bank, HSBC, BNP Paribas, Soc Gen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, and Barclays. The Court further recommends that Applicant be required to serve its

31

application materials, this report and recommendation, and any order adopting this report and recommendation on the current and prospective defendants in the UAE Proceedings by no later than 30 days from any such order.

DATED:    New York, New York
              February 17, 2026

_____
GARY STEIN
United States Magistrate Judge

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to Judge Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

32