UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re Application of

PT. BANK WOORI SAUDARA INDONESIA 1906, TBK,

Applicant for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings.

---

25 Misc. 523 (JPC) (GS)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

On November 18, 2025, PT. Bank Woori Saudara Indonesia 1906, Tbk ("BWS") filed an *ex parte* application (the "Application") pursuant to 28 U.S.C. § 1782, seeking authorization to serve subpoenas on the Clearing House Payments Company ("CHIPS"), the Federal Reserve Bank of New York (the "FRBNY"), and sixteen banks. Specifically, BWS seeks records of wire transfers sent or received by several entities and individuals allegedly connected to a sophisticated scheme to defraud BWS. On November 3, 2025, BWS commenced civil proceedings against certain of those entities and individuals in the Dubai Court of First Instance in the United Arab Emirates ("UAE"). According to BWS, the alleged scheme involved the misappropriation of its funds through numerous U.S. dollar-denominated wire transfers. BWS contends that such transfers would have passed through the payments clearing systems operated by CHIPS and the FRBNY. BWS seeks records from CHIPS, the FRBNY, and sixteen banks that participate in those clearing systems (collectively, "Respondents"), in hopes of tracing the movement of its misappropriated funds.

On February 17, 2026, the Honorable Gary Stein, to whom this case was referred for supervision of pretrial proceedings and to issue a report and recommendation on dispositive motions, recommended that the Application be granted in part and denied in part. Judge Stein

recommended that the Application be granted with respect to seven Respondents—CHIPS, the FRBNY, and five of the banks—but with the time frame for responsive records narrowed, and that the Application be denied as to the other eleven banks. Judge Stein determined that, with respect to seven of those eleven banks, BWS fails to satisfy the "resides or is found" in prong of Section 1782 and that BWS fails to identify a concrete factual basis for seeking records from any of the eleven banks. BWS objects to that recommended partial denial, as well as to Judge Stein's recommendation that its Application materials and any judicial decisions be served on the current and prospective defendants in the UAE proceedings. The undersigned agrees that, based on the evidence proffered by BWS, the justification for the proposed subpoenas to those eleven banks is entirely speculative, and therefore adopts Judge Stein's recommendation on that basis. Given this holding, the Court need not, and does not, reach Judge Stein's determination that certain Respondents do not "reside[]" in or are not "found" in this District. The Court also agrees that the Application materials, Judge Stein's Report and Recommendation, and this Opinion and Order should be served on the six current and prospective defendants in the UAE proceedings.

## I. Background

The Court recounts the procedural history to the extent relevant to resolving the Application. On November 18, 2025, BWS commenced this proceeding and filed *ex parte* its Application, Dkt. 1 ("Application"), a declaration from BWS's UAE counsel, Mohammed Hadef Jouan Rashed Al Dhaheri, Dkt. 2 ("Al Dhaheri Decl."), a declaration from BWS's New York counsel, Thomas Vandenabeele, Dkt. 3 ("Vandenabeele Decl."), and a supporting memorandum of law, Dkt. 4 ("Brief").

Through its Application, BWS seeks to serve subpoenas for records on CHIPS, the FRBNY, and sixteen banks. Those banks are Citibank, N.A. ("Citibank"); the Bank of New York

Mellon ("BNY Mellon"); JPMorgan Chase Bank, N.A. ("JPMorgan"); Habib American Bank ("Habib"); Deutsche Bank Trust Co. Americas ("Deutsche Bank"); Société Générale, New York Branch ("SocGen"); HSBC Bank USA, N.A. ("HSBC"); BNP Paribas USA ("BNP Paribas"); Wells Fargo Bank, N.A. ("Wells Fargo"); UBS AG ("UBS"); Bank of America, N.A. ("Bank of America"); Bank of China, New York Branch ("Bank of China"); Standard Chartered Bank US ("SCB"); Commerzbank AG, New York Branch ("Commerzbank"); Barclays Bank, PLC ("Barclays"); and Mashreq Bank PSC, New York Branch ("Mashreq"; collectively, the "Respondent Banks"). Application at 1; *see* Application, Exh. A (forms with proposed language for subpoenas to Respondents).

For CHIPS and the FRBNY, BWS seeks records relating to wire transfers sent or received, using those entities' payments clearing systems, by eighteen entities and individuals that BWS believes are connected to a sophisticated scheme to defraud BWS: PT Bara Daya Energi ("BDE"), Wonder Star Trading LLC ("Wonder Star"), Infinite Mining and Energy FZE ("Infinite Mining"), AL Global Energy LLC ("Global Energy"), Bilal Iqbal Merchant ("Merchant"), Manesh Viswambharan ("Viswambharan"), Nagoormeeran Mahatheer Mohammed ("Mohammed"), and eleven other individuals associated with BDE and Wonder Star. Application, Exh. A at 3, 6-9; Al Dhaheri Decl ¶¶ 7-27, 50. For each of the sixteen Respondent Banks, BWS seeks to subpoena records relating to all wire transfers sent or received by the same eighteen entities and individuals. Application, Exh. A at 4-6; Al Dhaheri Decl. ¶ 50. BWS's proposed subpoenas would cover transactions from April 1, 2019 through the present. Application, Exh. A at 3.

BWS contends that numerous transfers involving its misappropriated funds were made in U.S. dollars. *See* Al Dhaheri Decl. ¶¶ 20-23. Almost all global payments denominated in U.S. dollars, according to BWS, pass through the CHIPS system or the FRBNY's Fedwire system.

Vandenabeele Decl. ¶ 27. Moreover, BWS alleges that such U.S. dollar-denominated wire transfers are "necessarily cleared through correspondent banking relationships maintained by the Respondents in New York." Al Dhaheri Decl. ¶ 23.

BWS has identified some $52.8 million in improperly transferred funds in U.S. dollars to bank accounts held at Habib Bank AG Zurich, Mashreqbank PSC, and MCB Bank in the UAE. *Id.* ¶ 19. BWS also asserts that, in furtherance of the scheme, Global Energy submitted documents to Habib Bank AG Zurich and Emirates NBD Bank. *Id.* ¶ 21. Those four banks, BWS asserts, maintain correspondent banking relationships with five of the Respondent Banks: SCB and Habib are correspondent banks for Habib Bank AG Zurich; Mashreq is a correspondent bank for Mashreqbank PSC; JPMorgan is a correspondent bank for MCB Bank; and Citibank is a correspondent bank for Emirates NBD Bank. *Id.* ¶ 23.

For the remaining eleven Respondent Banks, BWS does not allege any specific connection between them and the fraudulent scheme. Instead, BWS offers the general assertion that they "act as global correspondent banks for international payments and wires in USD throughout their offices in New York City," Vandenabeele Decl. ¶ 34, and that some of these banks provide correspondent banking services "for local banks in Dubai, UAE," *id.* ¶¶ 35, 37, 39, 44, 45. *See also* Al Dhaheri Decl. ¶ 23 ("All these USD-denominated transactions were or are to be necessarily cleared through correspondent banking relationships maintained by the Respondents in New York, creating a digital trail that only US bank records can fully reveal.").

BWS argues that the records it seeks from Respondents will help BWS trace the movement of funds allegedly misappropriated in connection with the scheme, Brief at 12-13; "identify recoverable assets, accounts, and additional conspirators who may be joined as foreign

defendants," *id.* at 13; Al Dhaheri Decl. ¶ 51; and hold the individual directors of certain entities personally liable, Brief at 13; Al Dhaheri Decl. ¶ 52.

On February 17, 2026, Judge Stein issued a Report and Recommendation that recommended the partial grant and partial denial of the Application. Dkt. 11 ("R&R"). Specifically, Judge Stein recommended that the Application be granted with respect to authorizing the issuance of subpoenas to CHIPS, the FRBNY, Citibank, JPMorgan, Habib, SCB, and Mashreq, with the time frame of responsive records limited to October 1, 2021 through the present. *Id.* at 31. Judge Stein recommended that the Application be denied as to the remaining eleven Respondent Banks, on two bases. *Id.* First, Judge Stein determined that seven of those banks—SocGen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, and Barclays—do not "reside[] or [are] found" in this District, as both general and specific jurisdiction are lacking. *Id.* at 8-17. In addition, Judge Stein determined that, upon consideration of the discretionary factors for a Section 1782 application, the discovery requests should be denied for those remaining eleven Respondent Banks—specifically, the seven banks for which jurisdiction is lacking as well as BNY Mellon, Deutsche Bank, HSBC, and BNP Paribas. *Id.* at 23-28. That is because, Judge Stein explained, those eleven Respondent Banks "have no demonstrable connection to the alleged fraud, the participants in the alleged fraud, or transactions relating to the alleged fraud," based on the evidence proffered by BWS. *Id.* at 23. Judge Stein further recommended that BWS be required to serve its Application materials, the Report and Recommendation, and any order adopting the Report and Recommendation on the current and prospective defendants in the UAE proceedings within thirty days of such order. *Id.* at 28-31. Judge Stein advised that any party had fourteen days from service of the Report and Recommendation to file objections, and that the failure to file timely objections would preclude appellate review. *Id.* at 32.

On March 3, 2026, BWS filed partial objections to the Report and Recommendation. Dkt. 12 ("Objections"). BWS objects to Judge Stein's recommendation to deny the Application with respect to the eleven Respondent Banks, challenging his determinations that some of those banks are not "found" in this District, *id.* at 3-7, and that there is an insufficient factual basis for seeking records from any of the eleven banks, *id.* at 7-9. BWS also objects to Judge Stein's recommendation to require notice to its current and prospective adversaries in the UAE proceedings. *Id.* at 10-12.[1]

## II. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation. 28 U.S.C. § 636(b)(1)(C). If a party objects to any part of the magistrate judge's disposition, the district court reviews that section *de novo*. Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "Parties may neither regurgitate the original briefs to the magistrate judge nor raise new arguments not raised to the magistrate judge in the first instance." *Riaz v. Comm'r of Soc. Sec.*, No. 20 Civ. 8418 (JPC) (SLC), 2022 WL 4482297, at *2 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks omitted); *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019). A district court reviews for clear error those parts of a report and recommendation to which no party has filed proper or timely objections. 28 U.S.C. § 636(b)(1)(A); *see Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).

[1] BWS does not object to Judge Stein's recommendation that the undersigned grant the Application with respect to CHIPS, the FRBNY, and five of the Respondent Banks, and with a narrowed time frame for responsive records. *See generally* Objections.

## III. Discussion

Section 1782(a) provides that, "upon the application of any interested person," "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). In deciding whether to grant such an application, a district court must first decide whether it satisfies the statute's three mandatory requirements, meaning that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

If the application meets these prerequisites, the district court must then "use its discretion in balancing a number of [other] factors," *id.*, which the Supreme Court laid out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Under *Intel*, those factors are: first, whether the "evidence is sought from a nonparticipant in the matter arising abroad" such that the evidence may be "unobtainable" without the aid of Section 1782; second, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; third, "whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and fourth, whether that request is "unduly intrusive or burdensome." 542 U.S. at 264-65.

BWS contends that Judge Stein both misinterpreted the first statutory factor and erroneously concluded that the subpoenas were unduly intrusive or burdensome under the fourth

*Intel* factor. As mentioned above, Judge Stein first concluded that only CHIPS, the FRBNY, and nine of the Respondent Banks—Citibank, BNY Mellon, JPMorgan, Habib, SCB, Mashreq, Deutsche Bank, HBSC, and BNP Paribas—were "found" in this District pursuant to Section 1782's first statutory factor. R&R at 8-17. Judge Stein then turned to the *Intel* factors. *Id.* at 20-28. Emphasizing concerns under the fourth factor, Judge Stein concluded that these discretionary factors supported issuance of the proposed subpoenas only to CHIPS, the FRBNY, and five Respondent Banks—Citibank, JPMorgan, Habib, SCB, and Mashreq. *Id.* at 27. Judge Stein thus recommended denial of the Application as to the remaining eleven Respondent Banks.

The undersigned finds the discretionary analysis under *Intel* to be dispositive in addressing BWS's objections to the recommended partial denial of its Application, and thus need not address whether the statutory factors are met. *See In re Saul Klein*, No. 23 Misc. 211 (PAE), 2023 WL 8827847, at *6 (S.D.N.Y. Dec. 21, 2023) ("The Court need not definitively resolve whether the statutory factors are met because the *Intel* factors clearly require quashing the subpoenas."), *aff'd sub nom. Klein v. Altara RK Invs. Ltd.*, No. 24-228, 2025 WL 560105 (2d Cir. Feb. 20, 2025) (summary order); *see also Hranov v. Deutsche Bank AG*, Nos. 22-1075 (L), 24-1520 (CON), 2025 WL 573727, at *1 n.1 (2d Cir. Feb. 21, 2025) (summary order) ("The district court did not abuse its discretion in its *Intel* analysis, so we need not decide whether Deutsche Bank is 'found' in New York for purposes of § 1782.").

The Court begins with the first *Intel* factor: whether the "evidence is sought from a nonparticipant in the matter arising abroad" such that the evidence may be "unobtainable" without the aid of Section 1782. *Intel*, 542 U.S. at 264. Judge Stein concluded that this factor weighs in favor of granting the Application because none of the eighteen institutions from which BWS seeks discovery is a party that BWS "has sued or intends to sue in the UAE [p]roceedings." R&R at 20.

Because there was no objection to this conclusion, this Court reviews it for clear error. 28 U.S.C. § 636(b)(1)(A). The Court finds that it is not clearly erroneous. *See, e.g.*, *In re Furstenberg Finance SAS*, 18 Misc. 44 (JGK), 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018) (finding that the first *Intel* factor weighs in favor of granting the Section 1782 application where the banks from whom discovery is sought are not parties to the foreign proceedings); *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 15 Misc. 319 (LTS), 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) ("Here, the first factor militates in favor of granting the requested discovery, as none of the banks from which discovery is sought is participating in the foreign proceeding."). This factor, however, weighs at most only slightly in BWS's favor. The Second Circuit also has "on multiple occasions found that the first *Intel* factor weighed against relief even where the discovery target was not a party to the foreign proceeding." *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 59 (2d Cir. 2024). In *Saul Klein*, for instance, the Honorable Paul A. Engelmayer found that the first *Intel* factor weighed against a Section 1782 applicant who sought to subpoena non-parties in search of "the bank records of . . . his adversaries in the [foreign] proceedings." 2023 WL 8827847, at *11 (emphasis omitted). "In substance," Judge Engelmayer concluded, "the real party from whom documents [were] sought" were the applicant's adversaries, "all of whom [were] involved in the foreign proceedings." *Id.* (citation modified). Thus, the first *Intel* factor carries little weight in the circumstances presented.

The second *Intel* factor looks at "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Judge Stein did not clearly err in concluding that this factor weighs in favor of granting the Application because "there is no indication that UAE courts would reject the requested evidence." R&R at 21; *see* Al Dhaheri Decl.

¶ 56 ("There is no indication that the Dubai Court would not be receptive to the documentary evidence sought through this Application.").

Third, the Court considers "whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Judge Stein also did not clearly err in concluding that "there is no indication BWS is attempting to circumvent prohibitions on discovery in the UAE or is proceeding in bad faith." R&R at 22; *see* Al Dhaheri Decl. ¶ 56 ("[T]his Application does not circumvent any proof-gathering restrictions under UAE law that I am aware of.").

Finally, with respect to the fourth *Intel* factor, a district court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). A subpoena may qualify as overbroad under Rule 26 if "it is entirely speculative whether [the target] has any information at all relevant to this case." *Delgado v. Donald J. Trump for President, Inc.*, No. 19 Civ. 11764 (AT), 2024 WL 3730499, at *3 (S.D.N.Y. May 13, 2024). "The ultimate question of burdensomeness is within the district court's discretion to decide." *Frasers Grp.*, 95 F.4th at 59 (citation modified).

In objecting to Judge Stein's determination that the Application fails to satisfy the fourth *Intel* factor with respect to eleven of the Respondent Banks, BWS makes three arguments. Objections at 7-10. None persuades.

BWS first contends that its proposed subpoenas do not amount to a fishing expedition because BWS only seeks bank records involving the entities and individuals it believes are connected to the fraud scheme. *Id.* at 7. Yet, BWS offers no basis to believe that any of these eleven Respondent Banks are connected to the fraud; instead, it relies solely on their participation

in the payments clearing systems operated by CHIPS and the FRBNY. Further, in BWS's view, "[i]f some Respondents did not process transfers involving [those entities and individuals], they will simply confirm that they have no responsive records." *Id.* at 7-8. But this puts the cart before the horse. That a fishing expedition might ultimately be unfruitful as to some of its casting does not mean that a fishing expedition did not occur in the first place.

Next, BWS argues that discovery from all Respondents is necessary to "reveal the whole fraud scheme." *Id.* at 9. Because "[f]raud perpetrators . . . commonly split misappropriated funds and send them to numerous recipients around the world," BWS says, discovery of a limited number of Respondents would not be enough to uncover "where the scheme ends." *Id.* at 8, 9. BWS is effectively contending that its inability to "point to specific intermediary transactions" supports, rather than undermines, its Application, because it needs further discovery to trace the fraud. *Id.* at 8 (quoting *In re Abraaj Inv. Mgmt. Ltd.*, No. 20 Misc. 229 (VSB), 2023 WL 2674752, at *5 (S.D.N.Y. Mar. 29, 2023)). It is true that BWS need not identify a specific transaction for its proposed subpoenas to survive; if BWS could simply show that any of its subpoena targets "served as correspondent banks" for financial institutions with connections to the alleged fraud, for instance, that would suffice. R&R at 25-26. Indeed, it has done so for SCB, Habib, Mashreq, JPMorgan, and Citibank. But BWS has not done that for the other eleven Respondent Banks—indeed, it appears to have (almost) "randomly selected" those banks in seeking to pursue their records. *In re Saul Klein*, 2023 WL 8827847, at *13. While the Court appreciates the difficulties inherent in exposing fraud, a litigant may not obtain an open-season license to subpoena any correspondent bank in New York City it chooses simply because fraud can be challenging to investigate.[2]

[2] Furthermore, as Judge Stein observed, *see* R&R at 27, BWS may obtain information from the subpoenas authorized pursuant to this Opinion and Order to identify grounds for a subsequent

Finally, BWS insists that the case law supports authorizing discovery from all of the Respondents. Objections at 9-10. BWS relies primarily on *In re Kipperband*, No. 24-2627, 2025 WL 1418706 (2d Cir. May 16, 2025) (summary order), where "[t]he Second Circuit . . . rejected the appellant's argument that the discovery sought was a 'mere speculation.'" Objections at 10 (quoting *In re Kipperband*, 2025 WL 1418706, at *2). But the appellant in *Kipperband* argued that the financial records at issue would probably not "be used in the foreign proceedings" at all. *Id.* Here, by contrast, the question is not whether the records may prove useful; it is whether there is a sufficient basis to believe that each Respondent possesses any relevant records in the first place. BWS also relies on *In re Golden Meditech Holdings Ltd.*, No. 24 Misc. 24 (DEH), 2024 WL 5247285 (S.D.N.Y. Dec. 30, 2024), where the court granted discovery from several correspondent banks. *See* Objections at 10. But in *Golden Meditech Holdings*, the court also simultaneously denied discovery directed to banks in which the applicant had not identified a specific transaction showing it acted as an intermediary or correspondent bank. *In re Golden Meditech Holdings*, 2024 WL 5247285, at *4-5.

BWS also attempts to distinguish this case from *Saul Klein*, on which Judge Stein relied. Objections at 10; *see* R&R at 24-25. In that case, Judge Engelmayer found that a Section 1782 applicant had failed to meet the fourth *Intel* factor because, even though the records of financial transactions sought by the applicant from the banks were "likely not onerous to unearth," the applicant had not "come forward with a concrete basis for the assumption that [those] banks held pertinent transaction records" relating to transactions conducted by the applicant's adversaries in the foreign proceedings. *In re Saul Klein*, 2023 WL 8827847, at *14. BWS argues that *Saul Klein*

Section 1782 application, including, if appropriate, for authorization to issue subpoenas to some or all of the Respondent Banks for whom such authorization is today denied.

is distinguishable because Judge Engelmayer also found that the applicant failed to meet the statutory "for use" requirement under Section 1782. Objections at 9-10. But the *Saul Klein* court independently found that the applicant failed to satisfy the fourth *Intel* factor: the "wholly conjectural basis" for the sought-after subpoenas was "dispositive as to this factor." *In re Saul Klein*, 2023 WL 8827847, at *14. The Court thus overrules BWS's objection to Judge Stein's analysis of the fourth *Intel* factor.

Having assessed the four *Intel* factors individually, the Court balances them. "The *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). The first three *Intel* factors counsel in varying degrees towards granting the Application, but they are easily outweighed by the fourth factor. BWS's scattershot approach seeks discovery from sixteen different banks—many of which might well have no connection to the fraud claims that BWS is pursuing in the UAE. *See* Brief at 5; *cf., e.g.*, *In re Saul Klein*, 2023 WL 8827847, at *14 (finding that "the fourth factor weighs particularly heavily" where the court found "no non-speculative basis for the subpoenas"); *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *3-4 (denying an application in the alternative where the first factor counseled in favor of granting the application, the second and third factors were indeterminate, and the fourth factor counseled strongly against granting the application because the application had "every indication of being an archetypal fishing expedition"); *In re Asia Maritime Pac. Ltd.*, 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015) (concluding that a Section 1782 application would impose "too great a burden . . . on non-parties" where it would "direct sixteen large banks to conduct broad searches for information where the Petitioner has provided no basis to believe that [the foreign adversary] ever transacted

business through any particular bank" (emphasis omitted)); *In re Application Pursuant to 28 U.S.C. § 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419, 432-33 (S.D.N.Y. 2014) (finding that the burden of the discovery was "so great that it easily outweigh[ed] the other *Intel* factors, and compel[led] denial of [the] § 1782 application"). Indeed, BWS openly concedes that it does not "know whether each of the Respondents cleared transfers" for the defendants in the UAE proceeding. Objections at 8.[3] Thus, considered as a whole, the *Intel* factors weigh in favor of denying the Application as to SocGen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, Barclays, BNY Mellon, Deutsche Bank, HSBC, and BNP Paribas. The Court therefore adopts the Report and Recommendation's reasoning and conclusions as to those discretionary factors.

BWS also objects to Judge Stein's recommendation that BWS be required to serve its current and prospective adversaries[4] in the UAE proceedings because of "the risk of asset dissipation in fraud cases." Objections at 10-12. But "[i]n the context of *ex parte* discovery

---

[3] Judge Engelmayer observed that the banks may have been able to provide the sought information without shouldering an overly "onerous" burden. *In re Saul Klein*, 2023 WL 8827847, at *14. The same very well may be true here. *See* R&R at 26 ("It may be true, as BWS emphasizes, that the burden on any particular Respondent in complying with the Proposed Subpoena is relatively modest."). But the Court refuses to force almost a dozen banks to search through their records related to eighteen different entities and individuals when BWS has failed to "articulate [any] non-speculative basis" explaining why those banks are involved in any aspect of this case. *In re Saul Klein*, 2023 WL 8827847, at *14; *see also* R&R at 27 n.7 ("Precisely because the costs of compliance may not be large, it may be cheaper for any individual bank to comply with the Subpoena (whether it has responsive documents or not) than to fight it. The effect would be to allow Section 1782 applicants to circumvent the restraints on fishing expeditions otherwise imposed by Section 1782 and Rule 45.").

[4] To be clear, the "current and prospective" defendants are only the six entities and individuals that BWS has already sued or intends to sue. *See* R&R at 18. They are Wonder Star, Merchant, Global Energy, Mohammed, Infinite Mining, and Viswambharan. *See* Al Dhaheri Decl. ¶¶ 25 (stating that BWS has commenced proceedings in the UAE against Wonder Star and Merchant), 27 (stating that BWS "intends to commence" proceedings in the UAE against Global Energy, Mohammed, Infinite Mining, and Viswambharan).

applications under Section 1782, Rule 45(a)(4)'s notice requirement functions as a critical procedural safeguard meant to facilitate the right of adverse parties in the underlying foreign proceeding to challenge the discovery request, thereby ensuring that these one-sided proceedings do not offend due process." *In re Republic of Türkiye*, 24 Misc. 557 (JPC), 2025 WL 2200159, at *7 (S.D.N.Y. Aug. 1, 2025) (citation modified); *see Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order) (explaining that *ex parte* Section 1782 proceedings do not violate due process because parties may "later challenge any discovery request by moving to quash"). The nature of the alleged fraud alone does not outweigh the "critical procedural safeguard" that notice provides. *See* R&R at 29-30.

* * *

The undersigned additionally has reviewed for clear error the portions of the Report and Recommendation to which no objection was made, and finds them to be well reasoned and the conclusions well founded. Accordingly, the Court adopts the Report and Recommendation's reasoning and conclusions as to those portions as well.

## IV. Conclusion

The Court overrules BWS's objections to Judge Stein's analysis of the *Intel* factors and his determination of the need for notice to BWS's current and prospective adversaries, and finds no clear error in the portions of the Report and Recommendation to which no party objected. The Court therefore denies the Application as to BNY Mellon, Deutsche Bank, HSBC, BNP Paribas, SocGen, Wells Fargo, UBS, Bank of America, Bank of China, Commerzbank, and Barclays. The Court grants the Application as to CHIPS, the FRBNY, SCB, Habib, Mashreq, JPMorgan, and Citibank, but limits the subpoenas for those entities to require responsive records from October 1, 2021 through the present. The Court also orders BWS to serve this Application and its

corresponding materials, the Report and Recommendation, and this Opinion and Order on Wonder Star, Merchant, Global Energy, Mohammed, Infinite Mining, and Viswambharan, which are the current and prospective defendants in the UAE proceedings, within thirty days.

The Court emphasizes that its partial denial of this Application is without prejudice to a subsequent application by BWS under Section 1782 to request authorization to subpoena any of the Respondent Banks (or other entities for that matter) should materials produced pursuant to the subpoenas authorized herein or otherwise obtained by BWS reveal evidence that renders such an application appropriate. *See supra* n.2.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: October 16, 2026
New York, New York

JOHN P. CRONAN
United States District Judge